Below is an Opinion of the Court.

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

PAUL GRIGNON and BARBARA GRACE ) Case No. 10-34196-tmb13
HENDRIX, )
)
) MEMORANDUM OPINION
Debtors. )

This matter came before the court on the objections of Wayne Godare, the Chapter 13 Trustee (hereinafter the "Trustee"), to confirmation of the Debtors' proposed Chapter 13 plan. He appeared pro se. The Debtors, Paul Grignon and Barbara Grace Hendrix (hereinafter "Debtors"), were represented by Anthony Albertazzi and Tyler Elliott.

I took this matter under advisement following the confirmation hearing held on October 22, 2010. I have since reviewed my notes, the exhibits, and the pleadings and other submissions in the file. I also have read applicable legal authorities, both as cited to me and as located through my own research. I have considered carefully the oral arguments presented and have read counsels' submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil

Page 1 - MEMORANDUM OPINION

Procedure 52(a), applicable in this proceeding under Federal Rule of Bankruptcy Procedure 7052 and 9014.[1]
To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

## I. FACTS

Debtors filed this Chapter 13 on May 7, 2010. Debtors received a Chapter 7 discharge in Case No. 09-34521-rld on September 28, 2009, making the Debtors ineligible for discharge in this case. 11 U.S.C. § 1328(f)(1).

Debtors own two parcels of real property, both located in Bend, Oregon. One of the parcels is located on NW Iowa, the other on NW Flagline Drive. The Debtors value the NW Iowa property (hereinafter "the Iowa Property") at $225,000 and the NW Flagline Drive property (hereinafter "the Flagline Property") at $265,000.00. At the time of filing, both properties were rental properties.

Wells Fargo Bank, NA ("Wells Fargo") is the holder of the Note and Trust Deed on the Iowa Property. As of the filing date, its debt was approximately $417,000.00. In their original plan, Debtors proposed to keep the Iowa Property and cram down the value to $225,000.00. Wells Fargo filed an objection to its treatment as to the Iowa Property on July 19, 2010, on several grounds. Debtors now propose to abandon the Iowa Property and Wells Fargo withdrew its objection on October 13, 2010.

Although the Debtors themselves lived in a rental home when the case was filed, the Flagline Property is now the Debtors' principal residence. The Flagline Property is subject to two liens: A first trust deed in favor of US Bank National Association ("US Bank") in the amount of $379,371.72 (Proof of Claim No. 16-1 filed on August 13, 2010) and a second trust deed in favor of Wells Fargo in the amount of $189,277.62 (Proof of Claim No. 8-1 filed on June 9, 2010). Wells Fargo's proof of claim estimated the value of the Flagline property at $295,000, significantly less than the debt owing to US Bank.

The US Bank debt was in arrears $4,063.02 at the time of filing. The Debtors fell further behind on this debt post-petition. However, US Bank and the Debtors have agreed to cure the arrearage in a

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure ("FRBP"), Rules 1001-9037.

Page 2 - MEMORANDUM OPINION

proposed plan.

The Debtors had other debts owing as of the filing including real property taxes for 2009 of $4,373.52 on the Flagline Property and $2,646.78 on the Iowa Property, [2] student loan debt of approximately $78,000, and two secured car loans in favor of Selco Community Credit Union ("Selco").

Debtors filed a pre-confirmation amended plan (the "Amended Plan") dated September 3, 2010. [3] The Amended Plan provides for surrender of the Iowa Property. With respect to the Flagline Property, the Amended Plan provides for cure of the prepetition arrearage, in the amount of $4,063.00, on the debt secured by US Bank's lien. It further provides that Debtors will make maintenance payments in accordance with the terms of the Note.

With respect to Wells Fargo's junior lien on the Flagline Property the Amended Plan provides:

> "13. Pursuant to §506, and within 60 days after confirmation, Debtors will file an adversary proceeding or motion to void the junior liens held by Wells Fargo Home Mortgage in the real property located at 577 NW Flagline Drive in Bend, Oregon. Entry of the Order Confirming Plan is not res judicata with respect to this lien. Any Judgment or Order voiding such lien shall be void and such lien shall be reinstated if the case is dismissed or converted and Debtors' case is not completed. If the lien creditor has filed a secured claim and the lien is avoided, the claim will be treated as an allowed unsecured claim."

Under the Amended Plan, Selco will be paid the full amount of its secured claims with interest. However, one of the car loans will be paid over the life of the plan rather than as provided in the original loan. The Amended Plan further provides that "[t]he student loan claims of Goal Financial LLC on behalf of Great Lakes Higher Education Guaranty Corp shall be paid monthly from Paragraph 1(a) funds in the amount of $445." However, at the confirmation hearing, counsel for Debtors indicated this paragraph would be removed from the Amended Plan in an order confirming the plan.

---

[2] This debt will not be paid due to surrender of the Iowa property.

[3] This plan was not properly labeled as "amended" as required by LBR 3015-2(a)(1).

Page 3 - MEMORANDUM OPINION

## II. THE TRUSTEE OBJECTION

The Trustee objects to confirmation of the Amended Plan. He contends that because Debtors are not eligible for a Chapter 13 discharge, they may not use § 506(a) to strip off a wholly unsecured lien. However, Wells Fargo, the creditor affected by the lien stripping provision, did not object to this provision in the Amended Plan. Clearly, Wells Fargo had notice of the Debtors' proposed treatment as it filed an extensive objection to its treatment in the original plan, albeit as to the Iowa Property. Moreover, Wells Fargo recognized it was wholly unsecured when it filed its proof of claim with respect to the Flagline Property.

## III. DISCUSSION

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") a debtor was eligible to receive a discharge in a Chapter 13 case without regard to whether he or she had received a prior discharge in another case. BAPCPA changed the law regarding eligibility for discharge in a Chapter 13 case by adding a subsection to § 1328 which provides:

> "(f) notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge—
>
> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter; or
>
> (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order."

Given this change, a number of courts have addressed the issue of whether a debtor who is not eligible to receive a discharge in a subsequent Chapter 13 can strip off a wholly unsecured lien. The majority of those courts have determined that they cannot. The lead case so holding is In re Jarvis, 390 B.R. 600 (Bankr. C.D. Ill. 2008).

In Jarvis, the debtor, who was ineligible for a discharge, filed a chapter 13 plan which provided that a wholly unsecured lien against his residence would "be stripped off upon confirmation of Debtor's Plan," would receive no payments and would be "considered void." Id. at 602. There is no indication that the secured creditors objected to the proposed treatment under the debtor's plan. The court nonetheless

Page 4 - MEMORANDUM OPINION

denied confirmation based on its conclusion that:

> "A no-discharge Chapter 13 case may not, however, result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted." Id. at 605-606.

The Jarvis holding has been followed by a number of courts. See, e.g., In re Blosser, 2009 WL 1064455, 1 (Bankr. E.D. Wis. 2009) ("the *Jarvis* reasoning is compelling because allowing a debtor to file Chapter 7, discharge all dischargeable debts and then immediately file Chapter 13 to strip off a second mortgage lien would not be much different than simply avoiding the mortgage lien in the Chapter 7 itself. But Chapter 7 debtors are not allowed to use § 506 to avoid liens."); In re Mendoza, 2010 WL 736834, 4 (Bankr. D. Colo. 2010)("[a]llowing Debtors to avoid [a] second mortgage lien through this subsequent Chapter 13 filing would be tantamount to granting them a discharge as to that debt, and would thereby render the bar set forth in section 1328(f) inoperable."); and In re Fenn, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010) ("where a debtor is not eligible for a § 1328 discharge . . . allowing a permanent strip-off of the junior mortgage lien-after the end of a plan results in a de facto discharge, a benefit to which the Debtors herein are not entitled.").

The Debtor cites In re Tran, 431 B.R. 230 (Bankr. N.D. Cal. 2010), in support of his argument he is entitled to strip off a wholly unsecured lien despite the fact that he is not eligible for a Chapter 13 discharge. In Tran, the court rejected the holding of Jarvis. It concluded that "nothing in the Bankruptcy Code precludes a debtor that is not eligible for discharge from filing a chapter 13 case, obtaining confirmation of a chapter 13 plan, and with the exception of the right to a discharge, from enjoying all of the rights of a chapter 13 debtor, including the right to strip off liens." [4] Id. at 327. In reaching this conclusion the court noted that:

> "[T]he court can condition any permanent modification or stripping on the debtor's performance and completion of the debtor's chapter 13 plan. And if such a chapter 13 case is dismissed or converted to chapter 7 prior to full plan

---

[4] The Tran court did not address the effect of § 1325(a)(5) on a debtor's right to cram down a secured claim where the debtor is ineligible to receive a discharge.

Page 5 - MEMORANDUM OPINION

performance, the lien would remain intact, under § 349(b)(1)(C) in the case of a dismissal, or under *Dewsnup* in the case of a conversion to chapter 7." Id. at 236-237.

Although the Tran court found that using § 506(a) to strip off a wholly unsecured lien was not, per se, impermissible in a no-discharge chapter 13 case, it nonetheless denied confirmation of the debtor's proposed chapter 13 plan, finding that the plan did not meet the requirements of § 1325(a).

> "Under § 1325(a)(5), the court may not confirm a chapter 13 plan absent a finding that the 'plan has been proposed in good faith and not by any means forbidden by law.' Under § 1307(c), the court may dismiss a chapter 13 case for 'cause.' 'Cause,' in turn, includes a filing in bad faith. 'Bad faith,' as cause for dismissal pursuant to § 1307(c), depends on the totality of the circumstances, but certainly includes unfair manipulation of the Bankruptcy Code." Id. at 237 (citations omitted).

In Tran, the court found that "the totality of the circumstances shows that Tran filed this chapter 13 case solely for the purpose of avoiding the second deed of trust under circumstances where such avoidance was not available to her in chapter 7, and where no independent reason exists for her subsequent chapter 13 filing." Id. at 237 (citations omitted). Specifically, the court found that under the debtor's plan only a small portion of the arrearage on her first mortgage would be cured and there was no priority debt to be paid. In addition, the court noted that the debtor was "solvent in a balance sheet sense, and her monthly expenses are less than her monthly income." Id. at 238. Accordingly, the court concluded that the debtor's case was "nothing other than an attempt by Tran to unfairly manipulate the Bankruptcy Code to skirt the Supreme Court's holding in *Dewsnup*, and thus, was not filed in good faith." Id. at 238.

I agree with the reasoning in Tran. Under BAPCPA, a Chapter 13 debtor who has received a Chapter 7 discharge within 4 years of filing the Chapter 13 may not receive a discharge. § 1328(f). However, nothing in the Code prohibits a debtor who is ineligible for a Chapter 13 discharge from filing a Chapter 13 case. Nor is there anything in the Code which prohibits such a debtor from stripping off a wholly unsecured lien.

Under the facts in this case, I find the Debtors are not using Chapter 13 solely to skirt the Supreme Court's Dewsnup opinion. In addition to using their case to strip off the wholly unsecured lien on

Page 6 - MEMORANDUM OPINION

the Flagline Property, the Debtors are using the plan to cure the pre and postpetition arrearage on the US Bank debt, to pay prepetition property taxes on the Flagline Property, and to modify the payment terms on one of their vehicles. The Debtors are not solvent in a balance sheet sense. Moreover, without the bankruptcy, their monthly income is insufficient to meet their monthly expenses. The Debtors' monthly payments of $1,295 are expected to provide a dividend to the unsecured creditors. There was <u>no</u> evidence to support a finding of bad faith, and Wells Fargo withdrew its objections to confirmation, thereby consenting to the proposed lien stripping. Under these circumstances I find that the Amended Plan was filed in good faith and may be confirmed over the Trustee's objection.

At the time of confirmation, the Trustee also expressed concern that there would be nothing in the real property records to show that the junior lien had been avoided. However, the lien will not be avoided by confirmation of the Amended Plan. Rather, the Debtors will need to take additional action to avoid the lien. Under the Amended Plan, Debtors have the option of avoiding the lien by use of a motion or an adversary proceeding to avoid the lien. However, as our local forms make clear, the option of using a motion to avoid a lien is only available to debtors who are eligible for discharge. Therefore, Debtors must file an adversary proceeding. The Debtors should be able to record any judgment obtained in the adversary proceeding in the real property records.

At the conclusion of the confirmation hearing, Debtors requested that confirmation be denied to file a new plan to address the arrears on the US Bank debt. Accordingly, an order denying confirmation will be entered giving the Debtors 28 days to file a new plan.

###

cc: Anthony Albertazzi
    Wayne Godare